## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

SAMBA SARR,

                Petitioner,         :    Case No. 3:20-cv-429

    - vs -                      District Judge Walter H. Rice
                                Magistrate Judge Michael R. Merz

BRIAN COOK, Warden,
  Southeastern Correctional Institution,

                               :

              Respondent.

## ORDER GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS*; REPORT AND RECOMMENDATIONS

This is a habeas corpus case brought *pro se* by Petitioner Samba Sarr to obtain relief from his conviction in the Common Pleas Court of Montgomery County, Ohio, on two counts of kidnapping, one count of gross sexual imposition, and one count of assault (Petition, ECF No. 1, PageID 1).

Sarr neither paid the filing fee nor formally applied to proceed *in forma pauperis*. Because he is incarcerated, the Court *sua sponte* grants him leave to proceed *in forma pauperis*.

Under Rule 4 of the Rules Governing § 2254 Cases, the clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.

1

**Litigation History**

Sarr was indicted by a Montgomery County grand jury on two counts of kidnapping, one count of gross sexual imposition, and one count of assault arising from a sexual encounter with a woman identified as T.W.   Following a trial, the jury convicted Sarr on all charges. At sentencing, the trial court merged the two kidnapping convictions and the State elected to proceed on the second count of kidnapping (sexual activity) for purposes of sentencing. The trial court imposed a four-year prison term for kidnapping and a six-month term for gross sexual imposition; the two sentences were ordered to be served consecutively. The court imposed a concurrent 180-day sentence on the assault conviction for an aggregate prison term of four years and six months.

Sarr appealed to the Ohio Second District court of Appeals which affirmed the conviction, except that it remanded for merger under Ohio Revised Code § 2941.25 of the kidnapping and gross sexual imposition counts and resentencing. *State v. Sarr,* 2019-Ohio-3398 (Ohio App. 2d Dist. Aug. 23, 2019).   The Supreme Court of Ohio then granted leave to file a delayed appeal. *State v. Sarr*, 2020-Ohio-313 (Feb. 4, 2020).   However, appellate jurisdiction was then declined. 158 Ohio St. 3d 1487 (Apr. 28, 2020), and Sarr filed the instant Petition.

Sarr pleads the following grounds for relief

> **Ground One**:  Counsel for the defendant was ineffective as trial counsel failed to make proper objection.
>
> **Supporting Facts:**  The prosecutor engaged in misconduct during closing arguments by commenting that the jury "needs to do [their] job and find the defendant guilty," of which trial counsel failed to object to and further did not request that the jury disregard such statement. This statement indicated to the jury that the reason they were their [sic] was to find Petitioner guilty without regard to what the evidence might determine.

**Ground Two:** The trial court erred when it found Petitioner guilty of kidnapping (sexual activity), gross sexual imposition by force, and assault as such findings are insufficient to support the conviction.

**Supporting Facts:** Petitioner's charges all consisted of elements of force of which can be negated by consent, especially regarding consensual sexual encounters as such was the case here. The State must have provided evidence to suffice each element of the offenses. Because the evidence presented at trial was insufficient to support a conviction against Petitioner, a guilty verdict was against the sufficiency of the evidence.

**Ground Three:** Trial Court erred in denying to provide the Consent and Instruction to the jury and failure to provide the Petitioner with a fair and impartial trial, in violation of the Sixth Amendment.

**Supporting Facts:** The failure to include the consent instruction negates and greatly diminishes the effect of a defendant's asserting his constitutional right not to testify and asserts his innocensem [sic] thus depriving him of an adequate defense to the State's accusations.

**Ground Four:** The Trial Court erred by denying to provide the jury with instructions on lesser included offenses of abduction and unlawful restraint.

**Supporting Facts**: Abduction and Unlawful Restraint is the lesser included offense of Kidnapping, thus the trial court failed to give the lesser include[d] offense instruction to the jury.

(Petition, ECF No. 1, PageID 6, 8, 9, 11.)

# Analysis

## Ground One: Ineffective Assistance of Counsel: Failure to Object to Prosecutor's Comment

In his First Ground for Relief, Sarr asserts his trial attorney provided ineffective assistance of trial counsel when he failed to object to the prosecutor's comments in closing that the jury

should do its duty and convict. Sarr raised this claim as his First Assignment of Error on direct appeal and the Second District decided it as follows:

[*P16] Sarr's first assignment of error states as follows:

COUNSEL FOR THE DEFENDANT WAS INEFFECTIVE AS TRIAL COUNSEL DUE TO HIS FAILURE TO MAKE PROPER OBJECTIONS.

[*P17] Under this assignment of error, Sarr contends that trial counsel rendered ineffective assistance for failing to object to statements made by the prosecutor during closing argument.

[*P18] "Claims of ineffective assistance of trial counsel are reviewed under the analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989)." *State v. Sewell*, 2d Dist. Montgomery No. 27562, 2018-Ohio-2027, ¶ 63, 112 N.E.3d 1277. "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *Id.*, quoting *Bradley* at paragraph two of the syllabus. In order to establish prejudice, "the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Id.*, quoting *Bradley* at paragraph three of the syllabus.

[*P19] The sole issue before us relates to whether counsel improperly failed to object to alleged prosecutorial misconduct during closing argument.

[*P20] In Ohio, "[t]he test for prosecutorial misconduct is whether the conduct complained of deprived the defendant of a fair trial." *State v. Jackson*, 92 Ohio St.3d 436, 441, 2001-Ohio-1266, 751 N.E.2d 946 (2001), citing *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987). When reviewing a claim of prosecutorial misconduct in the context of closing argument, we note that prosecutors are given "wide latitude in closing argument, and the effect of any conduct of the prosecutor during closing argument must be considered in light of the entire case to determine whether the accused was denied a fair trial." (Citation omitted.) *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶

4

149. "[T]he touchstone of a due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

[*P21] The specific portion of the prosecutor's argument to which Sarr objects occurred during rebuttal closing argument wherein the prosecutor stated, "Don't be afraid to go back into that room and do your job and find this man guilty." Tr. 472. Sarr argues that this statement indicated to the jurors that their only option following deliberation was to convict on all charges.

[*P22] The State, however, contends that Sarr fails to provide the context for the statement. Specifically, the State notes that, in his closing argument, Sarr's counsel made the following statement:

> So here's the deal. Rough sex was her secret. That was her secret life. That was her private life. When she went home or went to work or met up with Dave and had these marks, these marks, she had to start explaining. She had to start explaining to somebody who went, where'd those come from? Now, I'm a victim.
> * * *
> The judge will tell you in a moment that in order to decide this case, you have to decide, if you can, what are the facts? What do we believe happened? Maybe you can, maybe you can't. You might go back and talk with each other and some of you might say I can't figure this out. I don't know what happened. I can't tell what happened. Guess what that is? It's called reasonable doubt.
> * * *
> [The judge] will tell you that you may not convict anyone of any crime unless and until you are firmly convinced of the truth of the charges. What's that mean? Firmly convinced. That means you don't convict him today or tomorrow and then go home and sit back and watch television and think you know, I wonder if there really was an aunt. I wonder if there really were ten people. I wonder if they really did have rough sex in the past. Too late. You found him guilty, too late.
>
> If you have any doubts, it's right now. Now, or never. That's what firmly convinced means. Firmly convinced means you're so decisive, you can't change your mind. You can't wonder tomorrow night did I do the right thing. Too late for this man.

So you have more power right now than you'll ever have over another human being. Do you realize that? You are 12 judges. Each of you gets a vote and each vote is equal to every other vote. You decide for yourself what is the right thing to do here. You talk to each other, but you don't change your vote or change your mind or change your opinion or surrender just because you're outnumbered, just because someone tells you you don't know what you're talking about, just because someone tells you they know better than you. The judge will tell you that. He'll say don't surrender.

Tr. 454-456.

 [*P23] The State contends that this argument was intended to scare the jurors and to make them doubt their ability to assess the reasonable doubt standard. Thus, the State contends that the prosecutor acted within proper bounds in making the following rebuttal:

Defense counsel stood up here and gave all of you a speech on don't go home and regret your decision. Don't go home and think oh, but what about this. Ladies and gentlemen, don't be scared to be a juror. It's not a scary job to be a juror. Beyond a reasonable doubt in the jury instructions is just based on reason and common sense. It's not scary. Don't be afraid to find this Defendant guilty. That's what Defense counsel wants.

You heard this victim sit up here. Her testimony is uncontroverted. She went over there to have sex. She had consensual sex and then things got violent and she was getting beaten. You've seen the photos of her injuries. You've heard her description of not being able to breathe. You've heard what she had to go through to get out of that house and run away. You heard she had to go in a stranger's house with ten people buck-naked in order to get help.

She came in here and she shared all of those gritty details with all of you for one reason, for you to hold this man accountable for two counts of kidnapping, one count of gross sexual imposition, and one count of assault. Don't be afraid to go back into that room and do your job and find this man guilty. Thank you.

[*P24]  We agree that the prosecutor could have been more artful and instead said something along the lines of "don't be afraid to go back into that room and do your job. And when you do, the evidence supports a finding of guilty." However, we cannot conclude that an isolated sentence in a three-volume trial transcript deprived Sarr of a fair trial. We note the jury was properly instructed that closing arguments did not constitute evidence. Further, the trial court properly instructed the jury on the reasonable doubt standard. It also instructed the jury that it could not convict Sarr unless the State produced evidence which convinced the jury, beyond a reasonable doubt, of every essential element of the charged offenses. Finally, the jury was instructed on the presumption of innocence. Thus, the jury was properly instructed on its duties, and we presume it followed those instructions.

[*P25] Therefore, trial counsel was not ineffective for failing to object to this statement. It is entirely possible that counsel, like us, did not believe the statement affected the fairness of the trial. It is also possible that counsel, for strategic reasons, thought it better not to object and draw attention to the statement. In any event, given that we conclude Sarr has failed to demonstrate prosecutorial misconduct depriving him of a fair trial, we cannot say that trial counsel was ineffective for failing to object to the contested comment. *See State v. Gilliam*, 2d Dist. Montgomery No. 17491, 1999 Ohio App. LEXIS 4574, 1999 WL 812335, *10 (Sept. 30, 1999) ("failure to make a meritless objection cannot be construed as ineffective assistance of counsel.").

[*P26] Sarr's first assignment of error is without merit and is overruled.

*Sarr*, 2019-Ohio-3398.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court.  28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000).  Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination

of the facts in light of the evidence presented in the State court proceedings.

The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.  In other words, to establish ineffective assistance, a defendant must show both deficient performance and prejudice.  *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010), citing *Knowles v. Mirzayance*, 556 U.S.111 (2009).

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance;  that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome." 466 U.S. at 694. See also *Darden v. Wainwright*, 477 U.S. 168, 184 (1986), citing *Strickland, supra.; Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998), citing *Strickland, supra*; *Blackburn v. Foltz,* 828 F.2d 1177, 1180 (6th Cir. 1987), quoting *Strickland*, 466 U.S. at 687. "The likelihood of a different result must be substantial, not just conceivable." *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011), quoting *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011).

> In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. See *Wong v. Belmontes*, 558 U.S. 15, 27, 130 S. Ct. 383, 175 L. Ed. 2d 328 (2009) (per curiam); *Strickland*, 466 U.S., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674. Instead, *Strickland* asks whether it is "reasonably likely" the result would have been different. *Id*., at 696, 104 S. Ct. 2052, 80 L. Ed. 2d 674. This does not require a showing that counsel's actions "more likely than not altered the outcome," but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters "only in the rarest case." *Id*., at 693, 697, 104 S. Ct. 2052, 80 L. Ed. 2d 674. The likelihood of a different result must be substantial, not just conceivable. Id., at 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

*Harrington v. Richter,* 562 U.S. 86, 111-112 (2011).

In this case the Second District recognized the controlling Supreme Court precedent, *Strickland v. Washington,* and applied that precedent by finding that the prosecutor's comment did not constitute misconduct and therefore it was not deficient performance to fail to object to it. In evaluating the underlying misconduct claim, the appeals court also applied the appropriate federal constitutional standard, to wit, whether the comment deprived the defendant of a fair trial, considering the trial as a whole. "However, we cannot conclude that an isolated sentence in a three-volume trial transcript deprived Sarr of a fair trial." *Sarr,* 2020-Ohio-3398, at ¶ 24. On

habeas review, "the relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). That is the standard this Court would apply if it were reviewing the prosecutor's comments as claimed instances of prosecutorial misconduct and the Second District's application of it is not unreasonable. It follows that the Second District's ultimate conclusion – that it is not ineffective assistance of trial counsel to fail to make a meritless objection – is also not an objectively unreasonable application of *Strickland*. Sarr's First Ground for Relief fails on the merits.

**Ground Two:  Insufficient Evidence for Conviction**

In his Second Ground for Relief, Sarr claims he was convicted on insufficient evidence. He combined this claim with a claim that his conviction was against the manifest weight of the evidence in his Second Assignment of Error on direct appeal and the Second District decided it as follows:

> [*P27]  The second assignment of error asserted by Sarr states:
>
> THE TRIAL COURT ERRED WHEN IT FOUND THE DEFENDANT GUILTY OF KIDNAPPING (SEXUAL ACTIVITY), GROSS SEXUAL IMPOSITION (BY FORCE), AND ASSAULT AS SUCH FINDINGS ARE AGAINST THE MANIFEST AND/OR SUFFICIENT WEIGHT OF THE EVIDENCE AND THE EVIDENCE PRESENTED WAS INSUFFICIENT TO SUPPORT THE CONVICTION.
>
> [*P28]  Sarr contends that his convictions were not supported by sufficient evidence and that they were against the manifest weight of the evidence.
>
> [*P29]  "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the

offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541 (1997). We apply the test from *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), which states that:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

(Citation omitted.) Id. at paragraph two of the syllabus.

 [*P30]  When reviewing a weight of the evidence challenge, a court reviews "the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1st Dist. 1983).

 [*P31]  Further, while "sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11. Accordingly, "a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Id*.

 [*P32]  Additionally, "[b]ecause the factfinder * * * has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the

11

testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 Ohio App. LEXIS 3709, 1997 WL 476684, *4 (Aug.1997 Ohio App. LEXIS 3709 22, 1997). "The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." (Citation omitted.) *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61 and 2013-CA-62, 2014-Ohio-3432, ¶ 24.

[*P33] Sarr was convicted of kidnapping in violation of R.C. 2905.01(A)(4), which provides that "[n]o person, by force, threat, or deception, * * * shall remove another from the place where the other person is found or restrain the liberty of the other person, [in order] [t]o engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will.

[*P34] "Sexual activity" is defined as "sexual conduct or sexual contact, or both." R.C. 2907.01(C). Sexual conduct means "vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another." R.C. 2907.01(A). Sexual contact includes "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).

[*P35] Sarr was also convicted of gross sexual imposition in violation of R.C. 2907.05(A)(1), which provides that "[n]o person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when * * * [t]he offender purposely compels the other person, or one of the other persons, to submit by force or threat of force."

[*P36] Finally, Sarr was convicted of assault in violation of R.C. 2903.13(A). That statute states that "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *."

[*P37] Sarr's arguments primarily focus on the weight of the evidence and the credibility of T.W. He contends the evidence presented was consistent with his theory of the case portraying a consensual, albeit rough, sexual encounter with T.W., and that, by contrast, the version of events provided by T.W. was not believable.

12

He further argues that there was no evidence to support T.W.'s claims because there was no physical evidence, including DNA, and no eyewitnesses to corroborate T.W.'s account of the events. Finally, he argues that the record was not clear as to when the encounter became non-consensual.

[*P38]  We begin by noting that under Ohio law, there is no requirement that a victim's testimony be corroborated as a condition precedent to conviction. Indeed, courts have specifically held that the testimony of a rape or assault victim alone, if believed, is enough evidence for a conviction. *State v. Blankenship*, 8th Dist. Cuyahoga No. 77900, 2001 Ohio App. LEXIS 5520, 2001 WL 1617225, *4 (Dec. 13, 2001); see also *State v. Landers*, 2d Dist. Greene No. 2015-CA-74, 2017-Ohio-1194, ¶ 96; *State v. West*, 10th Dist. Franklin No. 06AP-11, 2006-Ohio-6259, ¶ 16.

[*P39]  T.W. testified that she and Sarr were engaged in consensual intercourse when his behavior changed and he became violent. She testified that he choked and slapped her and that she struggled to get away. T.W. testified that Sarr choked her so badly that she had trouble breathing. T.W. testified that she managed to break free and run for the back door, but Sarr grabbed her by the neck and dragged her back into the room with the blankets. He then told her that because she tried to get away, she was going to have to lick his anus and genitals. He then sat on her face and held her down while she complied. T.W. testified that she was afraid not to comply and that she thought she might be released if she did comply. T.W. testified that after she complied, she was able to escape again and get to the back door. However, Sarr caught up to her before she could open the door. T.W. testified that Sarr was pulling and wrestling with her and that they both fell to the floor with Sarr on top of her. Afterward, she was again able to wrestle her way free at which time she ran out the back door.

[*P40]  Given that T.W. testified, and Sarr did not dispute, that the two initially engaged in consensual intercourse, the claim that the lack of DNA requires reversal of the conviction lacks merit. Further, as indicated, the nurse examiner and police noted, and took photographs of, multiple bruises and abrasions on T.W., including broken capillaries all along her neckline consistent with T.W.'s testimony that Sarr choked her. The nurse examiner also testified that T.W.'s voice was raspy and that T.W. indicated that was not how she normally sounds. There was also testimony from two officers who observed bruising and scratches to various parts of T.W.'s body, face and neck.

[*P41] We view this evidence most strongly in favor of the state, as we are required to do in considering a sufficiency challenge, and we conclude the State presented sufficient evidence to prove the elements of kidnapping, gross sexual imposition and assault beyond a reasonable doubt. Further, we conclude that the convictions were not against the manifest weight of the evidence, as the jury was free to believe T.W.'s account over the theory of consensual rough sex raised by Sarr's counsel.

[*P42] Sarr's second assignment of error is overruled.

*Sarr*, 2019-Ohio-3398.

A claim that a verdict is against the manifest weight of the evidence does not state a claim on which relief can be granted in federal habeas corpus because the habeas court is limited to correcting federal constitutional errors. A weight of the evidence claim is not a federal constitutional claim. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

On the other hand, absence of sufficient evidence, an allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970); *Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc). In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson,* 443 U.S. at 319; *United States v. Paige,* 470 F.3d 603, 608 (6th Cir. 2006); *United States v. Somerset*, 2007 U.S. Dist. LEXIS 76699 (S.D. Ohio 2007). This rule was recognized in Ohio

law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991).

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012).

In its decision of the Second Assignment of Error, the Second District applied the *Jackson* standard as it has come into Ohio law through *Jenks*. It recited the testimony of the victim as to the force Sarr used on here and corroborated her testimony with that of examining medical

personnel as to the results of that use of force. Sarr argued in the Second District that there was no DNA evidence offered and no eyewitnesses. As the Second District pointed out, DNA evidence would have been meaningless because the victim admitted that consensual intercourse took place. And it is difficult to see how much weight the absence of eyewitnesses to sexual activity would have.

The victim testified to Sarr's use of force and her testimony was consistent with her physical injuries. Sarr's theory of the case apparently was, per his counsel's closing argument, that T.W. consented to "rough" sex including choking and forced analingus. But there was not testimony to any such consent.

Sarr's Second Ground for Relief is without merit and should be dismissed.

**Ground Three: Failure to Instruct the Jury on Consent as a Defense**

In his Third Ground for Relief, Sarr contends that the failure to the trial judge to give an instruction on consent as a defense to claims of forced sexual conduct deprived him of a fair trial and deprived him of his right to decline to testify.

Sarr presented this jury instruction claim to the second District as his Thrid Assignment of Error and the court decided it as follows:

> [*P43] Sarr's third assignment of error is as follows:
>
> THE TRIAL COURT ERRED IN DENYING TO PROVIDE THE CONSENT DEFENSE AND INSTRUCTION TO THE JURY, ESPECIALLY GIVEN THAT THE DEFENDANT ASSERTED HIS FIFTH AMENDMENT RIGHT NOT TO TESTIFY. SUCH A FAILURE AMOUNTS TO ABUSE OF DISCRETION AND A FAILURE TO PROVIDE THE DEFENDANT WITH A FAIR AND IMPARTIAL TRIAL, IN VIOLATION OF THE SIXTH AMENDMENT.

16

[*P44] Sarr contends that the trial court abused its discretion by failing to give a requested jury instruction on consent. Specifically, Sarr asserts the trial court should have instructed the jury that "the Defendant believed his sexual contact(s) with the complainant occurred with her consent. If you should have any reasonable doubt as to whether Defendant reasonably believed that such contact(s) occurred with her consent, you must find the defendant not guilty."

[*P45] "The purpose of jury instructions is to properly guide the jury" in deciding questions of fact based on the applicable substantive law. (Citation omitted.) *Griffis v. Klein*, 2d Dist. Montgomery No. 19740, 2005-Ohio-3699, ¶ 48. "A defendant is entitled to have his instructions included in the charge to the jury only when they are a correct statement of the law, pertinent and not included in substance in the general charge." *State v. Frazier*, 9th Dist. Summit No. 25338, 2011-Ohio-3189, ¶ 17, quoting *State v. Theuring,* 46 Ohio App.3d 152, 154, 546 N.E.2d 436 (1st Dist.1988). A trial court's decision to deliver or to withhold any specific instruction is reviewed for abuse of discretion. (Citation omitted.) *State v. Ramey,* 2d Dist. Montgomery No. 27636, 2018-Ohio-3072, ¶ 27. A "trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond,* 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

[*P46] Sarr claims that by failing to give the requested affirmative defense instruction on consent, the trial court denied him the ability to present a complete defense. In support, he argues that the practice of "rough sex," in which he claims T.W. willingly engaged, presents a unique challenge under the law and that the instructions given by the trial court did not adequately address the issue in terms of consent.

[*P47] Sarr cites *State v. D.E.M*., 10th Dist. Franklin No. 15AP-589, 2016-Ohio-5638, for the proposition that a trial court must give an instruction on consent if requested by the defendant. However, we note that the court in D.E.M. did not mandate such an instruction. Instead, it merely stated that the trial court did not err in giving such an instruction. *Id.* at ¶ 138. Indeed, the D.E.M. court cited our case, *State v. Farler,* 2d Dist. Montgomery No. 12377, 1991 Ohio App. LEXIS 4107, 1991 WL 227057 (Aug. 28, 1991), for the proposition that "Ohio courts have rejected the claim that a separate instruction on consent must be provided where the court defined force under the statutory language, i.e., 'any violence, compulsion or constraint physically exerted by any means upon a person or thing.'" *Id.* at ¶ 137.

[*P48] In *State v. Gilliam*, 2d Dist. Montgomery No. 17491, 1999 Ohio App. LEXIS 4574, 1999 WL 812335, this court held that consent is not an affirmative defense to a charge of rape. We explained that the Revised Code defines an "affirmative defense" as "[a] defense expressly designated as affirmative" or "[a] defense involving an excuse or justification peculiarly within the knowledge of the accused, on which he can fairly be required to adduce supporting evidence." R.C. 2901.05(D)(1)(a) and (b). 1999 Ohio App. LEXIS 4574, [WL] at *7. We further explained that because the rape statute does not "designate consent as an affirmative defense[,]" it must, "if it is an affirmative defense at all * * * fall within the second definition." *Id.*

[*P49] Ultimately, we concluded that consent did not fall within the second definition:

> The burden of proving an affirmative defense rests with the party asserting the defense. * * * Were Gilliam's argument successful, the burden of proving consent would rest with the defendant in a rape case, whereas at present the defendant has no such burden. Instead, the burden of showing force or threat of force, which can also be called 'nonconsent,' is with the State. Placing opposing burdens on the defendant and State to prove consent and nonconsent, respectively, would also be nonsensical since one precludes the other. We have recognized as much in *State v. Farler*, 2d Dist. Montgomery No. 12377, 1991 Ohio App. LEXIS 4107, 1991 WL 227057, where we stated as follows:
>
> > In our estimation, there was no need to include a separate instruction on consent because the instruction, as given, adequately covered the consent "defense" by implication. Farler was not required to prove that Neal [the victim] consented to sexual conduct with him. The State was required to prove that Farler compelled Neal to submit to sexual conduct by force or threat of force. Such proof would have, by definition, negated consent. Absent such proof, Farler was entitled to acquittal. Thus, the court's instruction included the substance of the requested instruction.

1991 Ohio App. LEXIS 4107, [WL] at *7.

[*P50] We further stated that:

18

[A]n affirmative defense is not in the nature of a challenge to the State's evidence on one or more of the elements of the offense charged, as is consent to force or threat of force in the case of rape. In other words, an affirmative defense is one that can coexist with the State's satisfaction of its burden of proving each and every element of an offense beyond a reasonable doubt. *Id.*

[*P51] We conclude that the same reasoning applies in cases involving gross sexual imposition. As previously noted, R.C. 2907.05(A)(1) requires the State to prove that Sarr purposely compelled T.W. to submit to sexual contact by force or threat of force. In instructing the jury on this offense, the trial court properly instructed the jury regarding the elements of gross sexual imposition as well as the definitions of force, threat and purpose. As in *Farler*, we conclude that the instructions adequately informed the jury of "the consent 'defense' by implication." *Farler*, 1991 Ohio App. LEXIS 4107, [WL] at *8. In other words, if the State sustained its burden to prove that Sarr caused T.W. to submit to sexual contact by force or threat of force, the evidence negated consent.

[*P52] We conclude Sarr was not entitled to an instruction on the claimed affirmative defense of consent and therefore, the trial court did not abuse its discretion in denying the requested instruction.

[*P53] Sarr's third assignment of error is overruled.

Sarr, 2019-Ohio-3398.

Thus the Second District decided the consent instruction was not required because consent is not an affirmative defense under Ohio law to a charge of gross sexual imposition. That is, of course, a question of state law which this Court cannot review in habeas. *Bradshaw v. Richey*, 546 U.S. 74 (2005). Because Sarr posed this as a denial of a federal constitutional right to fair trial in the Second District, we must defer to its decision on the constitutional issue unless it is contrary to or an objectively unreasonable application of clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1). That is a difficult standard to meet because "instructional errors of state law generally may not form the basis for federal habeas relief." *Keahey v. Marquis*, ___ F.3d ___, 2020 U.S. App. LEXIS 33076 *5 (6th Cir. Oct. 20, 2020), quoting *Gilmore v. Taylor*, 508 U.S. 333, 344

(1993). A habeas petitioner must show that the mistake violated concrete Supreme Court holdings, not generalized principles, *Keahey* at *5, citing *Marshall v. Rodgers*, 569 U.S. 58 at 61 (2013), and *Woods v. Donald*, 575 U.S. 312 at 318 (2015).

Sarr's Third Ground for Relief fails because, quite simply, there is no Supreme Court precedent holding that in a case such as this, where the jury was instructed that force was a required element and returned a guilty verdict with that instruction, a separate instruction on consent was required by due process or to make the trial fair.

Sarr's Third Ground for Relief should be dismissed on the merits.

**Ground Four: Failure to Give Lesser Included Offense Instructions**

In his Fourth Ground for Relief, Sarr claims the trial court's failure to instruct on abduction or unlawful restraint as lesser included offenses of kidnapping denied him a fair trial. Sarr included this claim with a claim that kidnapping and gross sexual imposition should have been merged under Ohio Revised Code § 2941.25, a claim on which he was successful. *Sarr*, 2019-Ohio-3398 ¶¶ 54-66.

As to the jury instruction claim, the Second District found it was without merit:

> We conclude, based upon the evidence presented at trial and viewing the evidence in the light most favorable to Sarr, that the trial court did not err by concluding that the evidence would not support a rejection of the kidnapping charge, yet support a conviction for either abduction or unlawful restraint with a sexual motivation.

*Id.* at ¶ 74. Here again we have a decision on an issue of state law – what evidence is necessary to support a conviction for a particular state offense. As with the Third Ground for Relief, there is no United States Supreme Court holding which bears on this question. Indeed, the Sixth Circuit

has held there is no constitutional requirement to give a lesser included offense instruction in a non-capital case. *McMullan v. Booker*, 761 F.3d 662 (6th Cir. 2014); *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001); *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990).

Sarr's Fourth Ground for Relief is also without merit.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

October 24, 2020.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.